On the Merits.
The contest grows out of the following document:
“ Feeling this evening tlie uncertainty of life and shortness of time, I give vent to my feelings in writing. Should God in his wisdom see best to remove me hence, to that home where no traveler returns, in my approaching confinement, ’tis my wish that my dear husband, T. J. Fuqua, have the entire control of my children; they making their homes with him, and controlling their and my business until the marriage of each, at which time he must give them, Addieand Pinkie, five thousand dollars and their -trousseaux; and controlling the eleven thousand dollars belonging to me, until Pinkie becomes of age, at *272 which time it must be equally divided between my children. Should Addie be married, her portion of the interest on what belongs to me, eleven thousaud dollars, be paid her yearly until Pinkie becomes of age. Should Mr. Fuqua marry, I want all my silver, beds, and bedding be given to Addie and Pinkie, and they to give a portion of it to my Fuqua child when grown ; and if he marries, ’tis my wish that his third wife never be benefited by anything that belonged to me, in any way, and in case of my Fuqua child’s death, what it would inherit from me be given to Addie and Pinkie whenever my husband thought proper.
“Being in health and in my right mind, I hereby sign my iull name.
“ MRS. SARAH B. FUQUA.
“ September 12, 1873.”
Mrs. Fuqua died some time after the date of the above writing. On the tenth March, 1874, it was admitted to probate as her last will, and T. J. Fuqua, her surviving husband, was appointed executor thereof. On the twelfth March, J. W. Clinton, the under- tutor of Mrs. Fuqua’s children, moved to rescind the order appointing Fuqua executor. The appointment was rescinded. A motion was made for a rehearing. Pending this motion, the judge died. His successor recused himself on the ground of having been of counsel, and a lawyer was selected as special judge, to try the case. This was done by consent of counsel. After the rescinding order had been revoked, and the original order appointing the executor reinstated, a peremptory exception to the jurisdiction of the special judge to issue an order granting letters of executorship ratione materice was taken. The exception seems to be based upon the 2024th section of the Revised Statutes, which provides that “the district judges of the several judicial districts of this State, or the parish judge of any adjoining parish shall, in the absence of the parish judges from their respective parishes, or when the parish judge is interested, or from any cause is recused or can not act, grant all orders of any and every kind in cases of any kind in the parish courts which might have been granted by the parish judge if not absent or recused, which absence or recusation must be made to appear by the affidavit of the party or his attorney who applies for such order.” The exception was properly overruled. It was a regular suit which was pending in court, the contest being the right to be qualified as executor ■ of a will, one party asserting it, another contesting it. The parish judge had been of counsel for one of the contestants ; he was not personally interested in the matter in contestation. The constitution, act 90, provides that “in any case where the judge may be recused, and where he is not personally interested in the matters in contestation, he shall elect a lawyer, having the qualifications required for a judge of his *273 court, to try such cases. And when the judge is personally interested in the suit, he shall call upon the parish or district judge, as the case maybe, to try the case.” It is evident, therefore, under the facts of this case, that the parish judge proceeded properly in selecting a lawyer having tbe proper qualifications to preside at the trial in his place.
We come now to consider whether the instrument above quoted is a will. We are of the opinion that it is. It is in the olographic form, entirely written, dated and signed by the testatrix. Objection is made that the date is not affixed in the proper place. It is not essential that the date to an olographic will should precede the signature; it may be placed below. See Cain de Lisle, under art. 970 C. N., No. 30, where the authorities upon this point are cited. By it she certainly disposes of her estate, and directs how it shall be administered. This is all that the law requires. Nor do we see any fidei eommissum contained therein. She does not attempt to put any property in the name of any person except her children. All she does is to direct how that property shall be administered until her children shall marry.
We are not called upon to pass upon the question as to whether or not the will contains the appointment of an executor. All the proceedings had in the succession seem to have been copied into the transcript before us. But the appellee, Fuqua, made two separate applications to the court. One was to be qualified as executor; the other was to be ■confirmed as tutor; and two separate judgments have been rendered on these applications. The appeal seems to have been taken from the judgment confirming him as tutor. And the question now arises, does the Will appoint him tutor to the testatrix’s minor children ?
“ In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the terms of the testament.” C. C. 1712.
Now what was the intention of the testatrix with regard to her children ? It was that her husband should have entire control of them; that they should make their homes with him; and that he should control their property until they married. How could her wishes be carried out unless he was their tutor ? It seems to us that the wish she expressed in this regard was, in intendment of law, his appointment as tutor. That she had the right to appoint him tutor can not be doubted.
The last ground of opposition to his appointment is that he is indebted to the minors and is, consequently, excluded from being their tutor. This allegation is not, we think, established. It is possible that he may have received money belonging to the minors while he was cotutor with their mother. This would make him liable to account to them, but all tutors owe an account of their tutorship. We can not say that, because a cotutor is liable to account for property *274 belonging to minors which may have come into his hands, he can not be appointed their tutor by testament.
It has been pressed upon us that three of the five members of the family meeting called in the interest of the minors have advised that the appellee is not a fit person to have charge of them. The principal objection they make to him is that he is, comparatively speaking, a young man, and that there is no female living in the house with them. In the first place, there was nothing to authorize the meeting of the family, there being no vacancy in the office of tutor to be filled. In the second place, the reasons they give for their opposition are entirely outside of the law. We can deprive or exclude a person appointed as-this one was only for some of the causes mentioned in the Code. That he is comparatively speaking a young man, and that he has no other female living in the house with the minors, is not among them.
Under the will he has, we think, the right to be appointed tutor to-the minors. Should his conduct be such as to make it apparent that the trust the mother reposed in him was ill-founded, the law has pointed out the mode by which they may be protected, and no doubt protection will be given them. We can not say, in advance, that their mother’s choice of the person who, in her opinion, was best fitted to have charge of them, was ill-advised.
Judgment affirmed.
Rehearing refused.